IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                                                                              No. CR 12-00944 RB

SOPHIA MONIQUE ZAYAS,

        Defendant,

## MEMORANDUM OPINION AND ORDER

        This matter comes before the Court upon Defendant Sophia Monique Zayas' Amended Supplemental Motion to Withdraw Guilty Plea, or in the Alternative, Motion for Reconsideration. (Doc. 192.) The Government opposes this Motion. (Doc. 198.) Ms. Zayas also filed a pro se Motion to Withdraw Plea of Guilty and a Supplemental Motion to Withdraw Plea of Guilty. (Docs. 166-1; 188.) The Amended Supplemental Motion to Withdraw Guilty Plea (Doc. 192) supersedes the Supplemental Motion to Withdraw Plea of Guilty (Doc. 188). Having considered the submissions of counsel and relevant law, the Court will **DENY** these motions.

**I.     BACKGROUND**

        On October 22, 2007, Annalicia Zayas, Ms. Zayas' daughter, died just two months after she was born. (Presentence Report ("PSR"), at 3.) Annalicia's autopsy showed she suffered multiple skull fractures, hemorrhages, and scalp contusions two to three hours before she died. (*Id.* at 4.) The injuries "could have been caused by shaking, blunt force trauma, or a

combination of both." (*Id.*) Annalicia also had ten broken ribs, a broken arm, and four circular lesions on her body, "suggestive of cigarette burns," which were inflicted on multiple instances. (*Id.* at 5.) The doctor conducting the autopsy, Dr. Auerlius, concluded that Annalicia was killed by "multiple blunt force traumas" and classified the death as a homicide. (*Id.*) Ms. Zayas was arrested on April 24, 2012, four and a half years after the victim's death. (*See* Doc. 4.) Both the original Indictment (Doc. 1) and a subsequent Indictment (Doc. 34) were superseded by a Second Superseding Indictment, which was also challenged (Doc. 67) and replaced with a Third Superseding Indictment (Doc. 75). Ms. Zayas challenged the Third Superseding Indictment (Doc. 96), but then pleaded guilty to an Information (Doc. 152).

Ms. Zayas considered pleading guilty several times (Hr'g Tr., at 16–17), but eventually decided to go to trial (Doc. 166-1 at 2). Ms. Zayas arrived at the courthouse on Monday, February 24, 2014, intending to go to trial. (*Id.* at 2; Hr'g Tr., at 15.) However, on the previous Friday, Ms. Zayas' former counsel, Assistant Federal Public Defenders Andre Poissant and Dennis Candelaria, and expert Dr. Harry Wilson, met with the Government to review the evidence. (Hr'g Tr., at 14.) Dr. Wilson challenged much of the Government's medical evidence, but he agreed that Annalicia was a victim of battered child syndrome and child abuse, and possibly that neglect was a cause in her death. (*Id.* at 15–17.) On the morning of the hearing, the Government presented the Information (Doc. 150) and a new plea offer (Doc. 152). Ms. Zayas spent the morning discussing the plea with her counsel and ultimately decided to plead guilty. (Hr'g Tr., at 15.)

During the proceedings, the Court was aware of the short time Ms. Zayas had to consider the plea and addressed it in detail. (*Id.* at 2, 13–15, 16—21.) Prior to her guilty plea, Ms. Zayas spoke with her counsel and said all of her questions were answered to her

2

satisfaction. (*Id.* at 7.) Ms. Zayas had no complaints about her attorneys. (*Id.* at 12.) During the plea colloquy, Ms. Zayas testified she had signed the waiver of indictment and understood she was pleading to an Information. (*Id.* at 2, 3.) Ms. Zayas understood that the sentence for her plea would be 18 years, which could be reduced to 12 years or increased up to 24 years. (*Id.* at 3.) Ms. Zayas testified that she had "been fighting for a long time." (*Id.* at 15.) She also said Dr. Wilson "shed a lot of light" on the accusations, and that he could not provide a "total vindication." (*Id.*) Even though she "wanted to fight," Ms. Zayas admitted "there were a lot of things that [she] should have done and should have known." (*Id.*) Ms. Zayas further testified she attended school through twelfth grade. (*Id.* at 6.) Although she dropped out before she graduated, Ms. Zayas later took classes at Southwestern College of Business and worked as an Air Traffic Controller in the Air Force. (*Id.*) Ms. Zayas stated she understood she waived her right to appeal by agreeing to the plea. (*Id.* at 9.)

The language in the plea agreement encompasses a broad range of actions. (*See* Doc. 152.) In the plea, Ms. Zayas admits she "caused or permitted Annalicia Zayas . . . to be placed in a situation which endangered her life or health or tortured, cruelly confined or cruelly punished her." (Hr'g Tr., at 16.) Ms. Zayas justified her agreement to that language, stating, "I should have known because I am her parent." (*Id.* at 20.) Ms. Zayas admitted she was negligent, because Annalicia's injuries were never addressed. (*Id.*) In the plea agreement, Ms. Zayas agreed that "the Court may rely on any of the [the facts in the plea agreement], as well as facts in the [PSR], to determine [Ms. Zayas'] sentence . . . ." (Doc. 152, at 4.) The Government anticipated that "both parties [would] put on a great deal of evidence for the Court to make an informed decision" about sentencing. (Hr'g Tr., at 17.) The Court concluded

that the guilty plea was reasonable and Ms. Zayas pleaded knowingly, voluntarily, intelligently, and competently. (*Id.* at 19.)

In September 2014, Ms. Zayas wrote the Court a letter, expressing her desire to withdraw her guilty plea and remove Mr. Poissant and Mr. Candelaria as her counsel. (Zayas Ltr. Sept. 27, 2014). She asserted "Annalicia was never beatened [sic] or abused." (*Id.*) Magistrate Judge Lynch assigned Carlos Ibarra to represent Ms. Zayas (Doc. 161). A year later, the Court held a status conference. (Doc. 163.) Ms. Zayas expressed issues with the PSR and wanted to meet with Dr. Wilson regarding the facts in it. (*Id.*) Ms. Zayas then filed a Motion to Withdraw Plea of Guilty (Doc. 166), and Mr. Ibarra filed a Motion to Withdraw as Attorney (Doc. 167). The Court granted Mr. Ibarra's motion and appointed Mary Stillinger as Ms. Zayas' attorney in February 2016. (Doc. 178.) In October 2016, Ms. Zayas filed a Supplemental Motion to Withdraw Plea of Guilty. (Doc. 188.) Later that month, Ms. Zayas filed the instant Amended Motion to Withdraw Plea of Guilty or in the Alternative, Motion for Reconsideration. (Doc. 192.) The Court determines that the instant motion (Doc. 192) supersedes the prior motion (Doc. 188), and will consider it and the initial pro se filing (Doc. 166-1).

## II.    LEGAL STANDARD

The Court heard and accepted Ms. Zayas' guilty plea (Doc. 154), so Ms. Zayas' Motion to Withdraw Plea of Guilty (Doc. 166) falls under Federal Rule of Criminal Procedure 11(d)(2)(B). Ms. Zayas' handwritten motion, filed but unsigned by her counsel, asserts her innocence, argues she was not fully informed of her plea, and asserts ineffective assistance of counsel. (Doc. 166-1.)

Pursuant to Rule 11(d)(2)(B), "a defendant may withdraw a plea of guilty [if] . . . the defendant can show a fair and just reason for requesting the withdrawal." A defendant proceeding under Rule 11(d)(2)(B) does not have an absolute right to withdraw a guilty plea. *United States v. Rhodes*, 913 F.2d 839, 845 (10th Cir. 1990). "Although a motion to withdraw a plea prior to sentencing should be 'freely allowed,' [the appellate court] will not reverse a district court's decision unless the defendant can show that the court acted 'unjustly or unfairly.'" *United States v. Hamilton*, 510 F.3d 1209, 1213–14 (10th Cir. 2007) (quotation omitted). The decision of whether to permit withdrawal of a plea "always and ultimately lies within the sound discretion of the district court to determine on a case by case basis . . . ." *United States v. Soto*, 660 F.3d 1264, 1267 (10th Cir. 2011) (quotations omitted).

The Tenth Circuit analyzes seven factors when considering a motion to withdraw a plea:

(1) whether the defendant asserted her innocence,
(2) whether the plea was knowing and voluntary,
(3) whether defendant was assisted by counsel,
(4) whether the defendant delayed filing her motion and, if so, why,
(5) whether withdrawal would prejudice the government,
(6) whether withdrawal would substantially inconvenience the court, and
(7) whether withdrawal would waste judicial resources.

*Hamilton*, 510 F.3d at 1214. Among the factors, the most important are whether the defendant asserted innocence, the validity of the plea, and the effectiveness of counsel. *Id.* at 1217. If the defendant cannot meet the burden to prove these factors, then the Court need not address the remaining factors. *United States v. Byrum*, 567 F.3d 1255, 1265 (10th Cir. 2009). The Tenth Circuit has suggested an additional factor: "the likelihood of conviction." *United States v. Carr*, 80 F.3d 413, 421 n.5 (10th Cir. 1996).

### III. DISCUSSION

#### A. *The seven factors do not weigh in favor of allowing a withdrawal*

##### 1. Assertion of Innocence

Typically, this factor requires a mere assertion of innocence, *United States v. Carr*, 80 F.3d 413, 420 (10th Cir. 1996); however, a "change of heart, without more, is not sufficient" to satisfy the factor. *Byrum*, 567 F.3d at 1265. A court may consider potential rationale for changing the assertion, such as objections to the draft PSR. *See United States v. Bucio*, 377 F. App'x 782, 787 (10th Cir. 2010). Importantly, courts may weigh belated assertions of innocence against the admissions which "unmistakably establish guilt" to the charges pleaded. *United States v. Jaramillo*, 313 F. App'x 75, 76 (10th Cir. 2008).

Second, innocence of the charges pleaded is different from objections to facts asserted in the PSR. In a sentencing hearing, the Court must consider all relevant conduct. *United States v. Mendez-Zamora*, 42 F. App'x 183, 185 (10th Cir. 2002); *see also* U.S. Sentencing Guidelines Manual § 1B1.3 (U.S. Sentencing Comm'n 2015). As long as the plea agreement does not provide otherwise, the Government may seek to include in the PSR facts about dismissed counts. *See United States v. Furman*, 112 F.3d 435, 439 (10th Cir. 1997) (upholding reference to dismissed charges where agreement not to prosecute further reserved Government's right to "make known to the probation service of the Court, for inclusion in the [PSR] . . . any information the Government believes may be helpful to the Court . . . .") Where the defendant objects to facts in the PSR, those facts, unlike facts for a conviction, need only be found by a preponderance of evidence. *See United States v. Harrison*, 743 F.3d 760, 763 (10th Cir. 2014) ("When a defendant objects to a fact in a [PSR], the government must prove that fact at a sentencing hearing by a preponderance of the evidence.").

Although Ms. Zayas maintains that she never beat Annalicia, she admitted in the plea agreement and the plea colloquy that she "should have known" about her daughter's condition and done something about it. (Docs. 152, at 3; 172, at 21.) She said, in her own words, "I should have known, because I'm her mommy." (Doc. 172, at 22.) She admitted her actions were "negligent because [Annalicia's injuries weren't] addressed." (*Id.*) Ms. Zayas now asserts generally that she is a "falsely accused parent[ ]" (Doc. 166-1, at 20), but she does not specifically recant her earlier admission that she failed to recognize and prevent her daughter's condition. Ms. Zayas pleaded guilty to "caus[ing] or permit[ting] Annalicia . . . to be placed in a situation which endangered her life or health" (Doc. 150), which includes both direct abuse and failure to prevent harm. Even if Ms. Zayas agrees with these assertions, she fails to specifically deny the charge in the Information. Even if Dr. Wilson correctly determined that Annalicia's broken ribs were a result of the CPR and she died due to the defibrillation, Ms. Zayas could still be guilty of the charge in the Information. (*See id.* at 8.) Ms. Zayas has never recanted her admission of "permit[ting] Annalicia . . . to be placed in a situation which endangered her life or health." (Doc. 150.)

Instead, Ms. Zayas appears to challenge facts in the PSR, such as the autopsy results. (*See* Doc. 166-1, at 3.) These facts regarding Annalicia's condition are clearly relevant to sentencing. *See* U.S. Sentencing Guidelines Manual § 1B1.3(a)(3) (U.S. Sentencing Comm'n 2015) (requiring consideration of "all harm that resulted from the acts and omissions [caused by the defendant]"). Ms. Zayas has the right to object to the facts asserted in the PSR and the Court will determine whether the Government has shown them by a preponderance of the evidence. *See Harrison*, 743 F.3d at 763. The plea agreement does not prohibit use of information that may have provided a factual basis for other, dismissed charges. (*See* Doc.

7

152 at 2 ("The defendant agrees that the Court may rely on . . . facts in the [PSR], to determine the defendant's sentence . . . ."). In fact, the Government acknowledged that "this will be a sentencing case" and "both parties will put on a great deal of evidence for the Court to make an informed decision" about sentencing. (Doc. 172, at 18.) Ms. Zayas' objection to information in the PSR is a separate issue from her assertion of guilt or innocence regarding her plea. As such, Ms. Zayas fails to establish the factor of assertion of innocence.

### 2. Knowing and Voluntary Plea

"The longstanding test for determining the validity of a guilty plea is whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *United States v. Sanchez-Leon*, 764 F.3d 1248, 1259 (10th Cir. 2014). "[T]o determine whether a plea is voluntary, a court must assess whether the defendant fully understood the consequences of the plea." *United States v. Gigot*, 147 F.3d 1193, 1197 (10th Cir. 1998) (quotations omitted). "[S]olemn declarations made in open court carry a strong presumption of verity." *Sanchez-Leon*, 764 F.3d at 1259.

Ms. Zayas asserts she "plead[ed] under duress[;]" however, the facts indicate her plea was knowing and voluntary. Ms. Zayas was informed: her attorneys answered all of her questions and she had no complaints about them. (Hr'g Tr., at 8, 14.) Prior to the plea agreement, Mr. Poissant advised Ms. Zayas that she could face 36 years in prison even if the jury found her guilty of only two of the charges. (Doc. 166-1, at 2.) In fact, had Ms. Zayas been convicted on the Third Superseding Indictment, she could have been sentenced to life in prison. (PSR 17.) At the plea colloquy, Ms. Zayas was aware of the consequences and acknowledged she understood that the sentence for her plea was 18 years, with a potential reduction or increase of six years. (Doc. 172 at 4.) Ms. Zayas further testified that she waived

the indictment and understood she was pleading to an Information. (*Id.* at 3–5.) There is no evidence that she was confused about the Information or its source. The Court determined she had sufficient education and intelligence to understand the plea agreement. (Doc. 172, at 20–21.)

Perhaps most significantly, Ms. Zayas spoke in her own words about why she chose to plea. She testified that she had "been fighting for a long time" and that although Dr. Wilson "shed a lot of light" on the accusations, he could not provide "total vindication." (*Id.* at 17.) Even though she "wanted to fight," there were "a lot of things that [she] should have done and [that she] should have known." (*Id.*) These solemn declarations made in open court carry strong weight and a presumption of truth. *See Sanchez-Leon*, 764 F.3d at 1259. Ms. Zayas clearly contemplated her options and decided to plead. Consequently, Ms. Zayas pleaded knowingly and voluntarily.

### 3. Ineffective Assistance of Counsel

To establish ineffective assistance of counsel, a defendant must show "(1) that the counsel's performance was deficient, and (2) that this deficiency prejudiced [her] defense." *Hamilton*, 510 F.3d at 1216. An attorney's assistance is only deficient if it falls outside "the wide range of competence demanded of attorneys in criminal cases." *Id.* Depending on the weight of evidence against the defendant and the potential length of sentence, counsel may discuss a plea bargain with the government and "even attempt to convince [the] client that accepting the plea bargain [is in the client's] best interest while simultaneously preparing a defense for trial." *Carr*, 80 F.3d at 419. To establish prejudice in the context of a guilty plea, the defendant must show that "but for counsel's errors [the defendant] would not have pleaded guilty and would have insisted on going to trial." *Hamilton*, 510 F.3d at 1216.

Ms. Zayas admits she saw Mr. Poissant "a good amount of the time" (Doc. 166-1, at 2), and he answered all of her questions before she agreed to plead guilty (Doc. 172, at 8). However, she "felt betrayed in a sense" because when she reviewed the PSR she "saw to [her] horror that the Information from a Doctor was Michelle Aurelius' [sic] report. The Prosecutors report!" (Doc. 166-1, at 3.) Ms. Zayas also claims ineffective assistance based on Mr. Poissant's failure to "appeal" her conviction. (Doc. 166-1, at 3.)

Neither the plea colloquy nor the PSR includes any indication that the Information was based solely on the report from the prosecutor's expert. The plea colloquy indicates that Ms. Zayas' expert, Dr. Wilson, reviewed the evidence and may have agreed with the charge to which Ms. Zayas pleaded. (Doc. 172, at 17 (Ms. Zayas agreeing that Dr. Wilson did not provide "total vindication"); *id.* at 19 (the Government stating Dr. Wilson "agreed that this child was a victim of battered child syndrome[,] child abuse[,] and I believe on Friday he said that he agreed that neglect was the cause in her death.").) The PSR not only includes facts from the autopsy conducted by the Government's expert (PSR at 4), but also facts from other sources, such as police interviews with Ms. Zayas, her husband, and her grandmother (*id.* at 4–9), experts from CYFD (*id.* at 8), and neighbors, friends, and coworkers (*id.* at 8). Ms. Zayas, through her counsel, declined to provide her version of the offense. (*Id.* at 9.) Ms. Zayas is incorrect to assert that the Information was based solely on the Government's autopsy. Moreover, given the weight of evidence against her and the potential life sentence, Ms. Zayas' counsel was within the range of competence to try to convince Ms. Zayas to plead guilty. *See Carr*, 80 F.3d at 419.

Ms. Zayas cites *United States v. Garrett*, 402 F.3d 1262, 1265 (10th Cir. 2005), to assert that it is unreasonable for an attorney to refuse to file an appeal if a client instructs the

10

attorney to do so. *See also United States v. Snitz*, 342 F.3d 1154, 1155–56 (10th Cir. 2003). In such cases, the remedy is to allow the defendant to appeal. *See id.* at 1157 n.4. While true, a Motion to Withdraw a Plea of Guilty is not an appeal. *Compare* Fed. R. Crim. P. 11(d)(2)(B) *with* 11(e). For a Motion to Withdraw a Plea of Guilty, a defendant must show that, but for the ineffective assistance of counsel, the defendant would not have pleaded guilty. *See Hamilton*, 510 F.3d at 1216. Here, it is impossible for Ms. Zayas to show that but for her counsel refusing to move to withdraw her plea, she would not have pleaded guilty in the first place. Since the analysis depends on whether Ms. Zayas suffered ineffective assistance of counsel when pleading guilty, not after having pleaded guilty, Ms. Zayas fails to establish this factor. Moreover, the remedy to allow Ms. Zayas to file her Motion is unnecessary, because she was still able to file her Motion to Withdraw Plea of Guilty in time for the Court to consider it.

            4.     Additional Factors

The remaining factors require the Court to consider the potential burden on the Government and the Court, and as such cannot establish a fair and just reason for withdrawal. *Hamilton*, 510 F.3d at 1217. Since Ms. Zayas has failed to establish any fair and just reason to withdraw her plea, the court need not address these factors. *See id.*

    **B.**    ***The Motion does not support a withdrawal of the plea***

In her Amended Supplemental Motion (Doc. 198), Ms. Zayas asserts that the Court should allow her to withdraw her plea because the New Mexico Supreme Court has since clarified its interpretation of the offense with which she was charged in *State v. Consaul*, 331 P.3d 850 (N.M. 2014). The factual basis to which Ms. Zayas admitted constitutes the charged crime, even after the clarification in *Consaul*, and Ms. Zayas has not made any realistic assertions of innocence following the *Consaul* decision. This Court already found that Ms. Zayas' plea was knowingly and voluntarily made. (Doc. 189.) Ms. Zayas argues that the

Court violated Rule 11 by not adequately explaining the charges to her, by not sufficiently developing the factual basis for the plea, and by not advising her that her statements made in court could be used against her.

### 1. Explanation of the Charge

Rule 11(b)(1)(G) requires a court to inform a defendant of the nature of the charges he or she is facing before accepting a guilty plea. Courts can satisfy this duty by reciting the elements of the offense to the defendant. *United States v. Ferrel*, 603 F.3d 758, 762 (10th Cir. 2010). Ms. Zayas received a copy of the charging document. This "circumstance[], standing alone, give[s] rise to a presumption that the defendant was informed of the nature of the charges against [her]." *United States v. Weeks*, 653 F.3d 1188, 1200 (10th Cir. 2011) (quoting *Bousley v. United States*, 523 U.S. 614, 618 (1998)); *see also United States v. Rollings*, 751 F.3d 1183, 1193 (10th Cir. 2014) (noting that the defendant was given notice of the elements of the offense from the indictment and plea agreement, and from reviewing the plea documents with his attorney).

Ms. Zayas pleaded to an Information charging her with violating 18 U.S.C. §§ 7 and 13, and N.M. Stat. Ann. §§ 30-6-1(D)(1) and (2), and (E). (Doc. 150.) The New Mexico statute states: "Abuse of a child consists of a person knowingly, intentionally, or negligently, and without justifiable cause, causing or permitting a child to be . . . placed in a situation that may endanger the child's life or health; . . . [or] tortured, cruelly confined, or cruelly punished." N.M. Stat. Ann. §§ 30-6-1 (D)(1)–(2). The statute defines the term "negligently" as: "A person knew or should have known of the danger involved and acted with a reckless disregard for the safety of the child." *Id.* § 30-6-1(A)(3). Acting with "reckless disregard" means "to consciously disregard a substantial and unjustifiable risk of such a nature and

12

degree that its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation." *Consaul*, 332 P.3d at 857–58 (citing MODEL PENAL CODE § 2.02(2)(c)).

At the time of Ms. Zayas' plea, New Mexico case law interpreted the legislative intent to be that the "concept of criminal negligence, not recklessness, [would be] the standard for negligent child abuse." *See State v. Schoonmaker*, 176 P.3d 1105, 1117 (N.M. 2008). *Consaul*, however, overruled *Schoonmaker* and clarified that the statute conveys recklessness as the applicable *mens rea*. *Consaul*, 332 P.3d at 858. Ms. Zayas claims that the recklessness requirement was not adequately explained to her prior to the plea. However, Ms. Zayas acknowledged that she had read the Information, which charged that she "did negligently, and without justifiable cause, cause and permit Jane Doe #1, a child, to be placed in a situation that may endanger Jane Doe #1's life and health, and to be tortured and to be cruelly punished, which resulted in great bodily harm to Jane Doe #1." (Doc. 150.) The factual basis to which Ms. Zayas admitted included the recklessness element of the offense. Ms. Zayas admitted that she "knew or should have known that [her] conduct created a substantial foreseeable risk that her daughter . . . would be physically harmed or killed. [Ms. Zayas] disregarded that risk, and . . . was wholly indifferent to the consequences of [her] conduct and to the welfare and safety of [her] daughter." (Doc. 152 at 3–4.) The Information adequately informed Ms. Zayas that the United States must prove that she acted recklessly. Ms. Zayas was sufficiently informed as to the nature of the charge against her.

        2.        Sufficiency of the Factual Basis

In her reply to the Government's response, Ms. Zayas asserts that the Court need not reach the *Carr* factors because the factual basis to support a plea of guilty was deficient. This is not the case, however. Rule 11(b)(3) states that a court must ensure that there is a factual basis for a guilty plea "when the court accepts the plea, and when it enters judgment on it." *United States v. Moran*, 452 F.3d 1167, 1171 (10th Cir. 2006). The court may use a number of sources of information, including, but not limited to, the defendant's admissions, proffers and testimony offered by the United States, and the PSR. *See United States v. Vonn*, 535 U.S. 55, 60 (2002). Ms. Zayas argues that the facts in the plea agreement and the factual recitation at the change of plea hearing were insufficient because neither "contain[ed] facts constituting evidence of the 'who, what, when and where'" and only constituted "legal conclusions." (Doc. 192, at 10.) She also argues that she admitted to civil, not criminal negligence. *Id*. The Government, however, specified the *mens rea* as set out in the statute and alleged that between August 16, 2007, and October 22, 2007, Ms. Zayas' conduct resulted in the injuries that amounted to great bodily harm to a child who was less than 12 years old at the time of the injuries. (Doc. 172, at 11:17–12:14.) The Government identified the injuries with specificity. The factual recitation contained the name of the victim, the period of the injuries, the specific injuries suffered, and the location of the residence where the injuries occurred. This extends beyond "legal conclusions" and is, in fact, a showing of the 'who, what, when, and where' of the acts.

The Court had sufficient facts available at the change of plea hearing to accept the plea. The Government informed the Court that the victim had experienced "Battered Child Syndrome, child abuse, and . . . neglect was the cause of her death." (*Id.* at 19:5–8.) The facts

were adequately specific "to show [D]efendant's conduct on the occasion involved was within the ambit of" N.M. Stat. Ann. §§ 30-6-1(D)(1), (2), and (E) because the specific injuries recited constituted great bodily harm and the harm occurred because of Ms. Zayas' recklessness. In the plea agreement, Ms. Zayas specifically admitted that she disregarded the risk of injury from her conduct and that she was wholly indifferent to the consequences of her conduct. (Doc 152, at 3–4.)

Rule 11's factual-basis requirement is intended to "protect a defendant who is in the position of pleading voluntarily with an understanding of the nature of the charge but without realizing that his conduct does not actually fall within the charge." *McCarthy v. United States*, 394 U.S. 459, 467 (1969). Ms. Zayas is not among those the rule is intended to protect. The Government proffered the testimony of several witnesses it would call at trial at the February 2, 2016 hearing on Ms. Zayas' initial motion to withdraw her guilty plea. (Doc. 189, at 8:12–13:18.) The witnesses would have testified that Ms. Zayas was a violent drunk who became incapacitated when she had been drinking. (*Id*. at 8:25–9:7.) Investigators found an empty box of hard liquor bottles at Ms. Zayas' home just after her daughter's death. (*Id*. at 10:1–7.) The witnesses would also testify that Ms. Zayas was the primary caretaker. (*Id*. at 10:8–23.) The Government had expert witnesses prepared to testify that they disagreed about which particular injury caused the victim's death, but that they would agree that the "accumulation of the child abuse caused [her] death." (*Id*. at 11:6–14.) The Government was also prepared to provide testimony about incriminating statements made by Ms. Zayas, including her statement that she "figured it was something like that" when informed about all of the injuries that caused the victim's death. (*Id*. at 11:15–12:13.) The Government also planned to present

evidence that Ms. Zayas' older child failed to thrive under her care and that the state removed her from the home. (*Id*. at 13:6–18.)

The PSR, another valid source of facts the Court can use to determine whether to accept a plea agreement, summarized the evidence against Ms. Zayas. The PSR stated that the victim was "just over two months old" when she died, and her death was caused by "either shaking, blunt force impact, or a combination of both." (PSR at ¶ 6.) The victim also "suffered from numerous fractures, which were in various degrees of healing, as well as cigarette burns inflicted on different dates prior to the injuries she received which ultimately caused her death." *Id.* On the day the victim died, Ms. Zayas cared for her throughout the day. *Id*. ¶¶ 8–9, 13, 15, 18, 22. The PSR goes into specific detail about all of the victim's injuries and the results of the autopsy. The PSR concluded that "based on all evidence . . . [Ms. Zayas' daughter] was the victim of repeated non-accidental trauma and child abuse." *Id*. ¶ 31. Throughout the investigation, Ms. Zayas and her husband and co-defendant, Peter Zayas, told investigators that Ms. Zayas was an alcoholic or binge-drinker. *Id.* ¶¶ 14, 17, 28. Other witnesses corroborated this. *Id*. ¶ 25.

Following the *Consaul* framework, it is clear that Ms. Zayas "consciously disregard[ed] a substantial and unjustifiable risk" and that the risk was "of such a nature and degree that its disregard involves a gross deviation from the standard of conduct[.]" *Consaul*, 332 P.3d at 857–58. Ms. Zayas was not in the "position of pleading voluntarily with an understanding of the nature of the charge but without realizing that [her] conduct does not actually fall within the charge." *McCarthy*, 394 U.S. at 467. Ms. Zayas knew that the conduct she was admitting was reckless.

Ms. Zayas repeatedly stated that she did not know, but should have known, about the victim's injuries. (Doc. 172, at 21:18–21.) The New Mexico statute punishes reckless disregard of risks that cause the injuries, not reckless disregard of the existence of the injuries. *See Consaul*, 332 P.3d at 857–58. Taken with all of the other facts available to the Court from the permissible sources, the factual basis given at Ms. Zayas' plea hearing was sufficient for the Court to accept the plea.

### 3. Lack of Perjury Advisement

Rule 11(b)(1)(A) states that the court must advise the defendant of the "government's right, in a prosecution for perjury or false statement, to use against the defendant any statement that the defendant gives under oath" before accepting a guilty plea. The Court failed to make this advisement, but Ms. Zayas conceded that the technical violation did not affect her substantial rights. (Doc. 192, at 12.) Ms. Zayas alleges that the absence of the advisement is a "cog in the bigger wheel of violations of Rule 11." *Id*. Ms. Zayas fails to point to an authority for the proposition that multiple Rule 11 errors warrant a withdrawal of the plea. She also does not claim that she would have pleaded differently if she had been given the advisement.

## IV. CONCLUSION

Ms. Zayas has not shown a "fair and just" reason for withdrawing her guilty plea. Withdrawal of Ms. Zayas' guilty plea would prejudice the Government because of the lapse of time between the offense and the trial. The delays in filing the motions mean that witnesses would have faded memories and could be difficult to locate. The Court has already found that Ms. Zayas was assisted by "professional, competent, and good, bordering on great advocates." (Doc. 189, at 23:1–15.) All of the *Carr* factors weigh against Ms. Zayas' motion to withdraw

her plea. New Mexico's clarification of its statute in *Consaul* has no bearing on whether her guilty plea should be withdrawn. She failed to provide a credible claim of innocence, and the Court's prior findings weigh against granting Ms. Zayas' motion.

For all of the forgoing reasons,

**IT IS ORDERED THAT:**

Defendant Sophia Monique Zayas' Amended Supplemental Motion to Withdraw Guilty Plea, or in the Alternative, Motion for Reconsideration (Doc. 192), Supplemental Motion to Withdraw Guilty Plea (Doc. 188), and Motion to Withdraw Plea of Guilty (Doc. 166-1) are **DENIED**.

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**