IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | |
| Plaintiff, | * | 2:12-CR-00944-2 |
| v. | * | |
| SOPHIA ZAYAS, | * | ORDER |
| Defendant. | * | |

Before the Court are the following pending motions: (1) the Government's Motion in Limine to Preclude Evidence Regarding Possible Sentence or Consequences of Conviction or from Suggesting Jury Nullification (Doc. 337); (2) the Government's Omnibus Motion in Limine (Doc. 338); (3) the Government's Motion in Limine Regarding Peter Zayas's Prior Statements (Doc. 339); (4) Defendant's Motion in Limine to Exclude Certain Exhibits (Doc. 344); (5) Defendant's Motion in Limine to Exclude Evidence and Testimony Regarding CYFD Hearing and Result (Doc. 345); (6) Defendant's Motion in Limine to Prohibit Improper Arguments or Demonstrations (Doc. 346); and (7) Defendant's Motion in Limine to Preclude Improper Expert Testimony (Doc. 347).

## I. Doc. 337: Jury Nullification

The Government argues Defendant should be precluded from mentioning or referring to the possible criminal penalties she faces if she is convicted of the charged offenses or arguing any form of jury nullification. (Doc. 337.) Defendant does not oppose the Government's Motion. (Doc. 361.) Thus, the Court grants the Government's Motion.

## II. Doc. 338: Government's Omnibus Motion in Limine

### A. Allegations of Government Misconduct

The Government argues Defendant should be precluded from introducing any evidence,

making any statement, or asking any questions regarding allegations of government misconduct or constitutional violations. (Doc. 338 at 1.) Defendant responds that she does not intend to introduce any evidence, make any statement, or ask any questions about allegations of government misconduct or constitutional violations. (Doc. 362 at 1.) Accordingly, the Court denies the Government's motion as moot. Should Defendant's position change, she must raise the topic first outside of the presence of the jury.

### B. Pretrial Rulings

The Government argues Defendant should be precluded from introducing any evidence, making any statement, or asking any questions regarding the Court's pretrial rulings. (Doc. 338 at 2.) Defendant does not oppose the Government's Motion. (Doc. 362 at 1.) The Court grants the Government's Motion.

### C. Information Known Only to Defendant

The Government argues Defendant should be precluded from introducing any evidence, making any statement, or asking any questions regarding any information or facts that could only come to the jury's attention through the sworn testimony of Defendant absent notice from Defendant that she will testify at trial. (Doc. 338 at 2.) Defendant responds she will comply with the Federal Rules of Evidence. (Doc. 362 at 1.) Both parties shall comply with the Federal Rules of Evidence. The Court reserves ruling as to specific issues that may arise during trial.

### D. Defense Exhibits

The Government argues Defendant should be precluded from introducing any evidence, making any statement, or asking any questions regarding defense exhibits that have not previously been supplied to counsel for the Government. (Doc. 338 at 2.) Defendant responds that she has not identified any anticipated exhibits that are not part of the discovery produced by the Government.

2

(Doc. 362 at 1–2.) Therefore, the Court denies the Government's Motion as moot. Should Defendant's position change, she must promptly make any such evidence available to the Government.

### E. Verbal and Nonverbal Communications

The Government argues Defendant should be precluded from making any type of verbal or nonverbal communications or reactions while the jury is present as it would be a form of testimony that is not subject to cross-examination. (Doc. 338 at 2–3.) Defendant responds that the motion is an overbroad attempt to address conduct that has not occurred nor has there been any reason to suggest such conduct might occur during the trial. (Doc. 362 at 2.) Defendant argues she cannot be prevented from communicating with her counsel during the trial. (*Id.*)

From the motion, the Court gathers that the Government is attempting to prevent any sort of uncontrolled demonstration of emotions from Defendant during the trial that may have a prejudicial effect on the jury. The Court acknowledges the subject matter of this trial involves heightened emotions but nevertheless expects all trial participants to behave with civility and decorum. The Court denies the Government's motion but reminds the parties of its duty to maintain order in the courtroom and will recess the jury if any disruptions occur.

## III.  Doc. 339: Peter Zayas's Prior Statements

The Government next argues Defendant should be precluded from entering into evidence any prior statements made by Peter Zayas because they are inadmissible hearsay. (Doc. 339 at 3–6.) The Government also asserts that Defendant should be precluded from entering into evidence Mr. Zayas's plea of guilty to one count of child abuse resulting in great bodily harm. (*Id.* at 7–8.) The Government contends Mr. Zayas's guilty plea is not relevant nor is it admissible, but if it were, under the rule of completeness, the Government should be permitted to introduce the factual basis

for Mr. Zayas's plea. (*Id.*)

Defendant responds that she anticipates and, in fact, has relied on the Government's representation that Mr. Zayas will be present at the trial and available to testify, and that if Mr. Zayas is not called to testify as a witness in the Government's case, then Defendant may call him in her defense. (*See* Doc. 363.) Defendant agrees that if Mr. Zayas testifies, his conviction and, consequently, the factual basis for his plea is admissible; otherwise, his conviction is inadmissible. (*Id.* at 2.) Defendant therefore does not oppose the Government's motion to preclude Mr. Zayas's prior statements or his conviction if Mr. Zayas does not testify. (*Id.*) Defendant requests an opportunity to confer with counsel for the Government and the Court if, for some reason, Mr. Zayas is unavailable to testify at trial. (*Id.*)

In general, hearsay is inadmissible. Fed. R. Evid. 802. Both parties shall comply with the Federal Rules of Evidence regarding hearsay and any exceptions or exclusions. The Court reserves ruling as to specific issues that may arise during trial.

## IV. Doc. 344: Certain Exhibits

Defendant moves to limit certain exhibits, specifically, cumulative photographs and autopsy photographs of Jane Doe 1. (Doc. 344.) Defendant concedes photographs of Jane Doe 1 depicting her condition at the time of her death "are undoubtedly relevant." (*Id*. at 2.) Nevertheless, Defendant asks the Court to limit the number of photographs the Government is permitted to enter into evidence and to exclude "unnecessarily gruesome" autopsy photographs of the child's body because of their unfairly prejudicial effect. (Doc. 344 at 2–3.) Finally, Defendant asks that the Court order the Government to disclose to the defense any demonstrative aids it intends to use during trial, including enlarged photographs.[1]

---

[1] The Government filed its list of proposed exhibits on June 7, pursuant to the Court's Order. (*See* Doc 385.) (*See also* Doc 352 (requiring the parties to file proposed jury instructions, proposed voir dire, trial briefs, and exhibit

4

The Government responds that it intends to introduce autopsy photographs because such photographs "are highly probative of material issues such as the cause and manner of death of Jane Doe #1." (Doc. 353 at 2–3.) The Government further asserts the autopsy "photographs will corroborate and clarify" certain expert testimony. (*Id.* at 3.) The Government also contends the risk of unfair prejudice can be minimized in this case through the Court's instructions to the jury. The Government states it will not introduce cumulative photographs and asks the Court to reserve ruling until it is able to review and admit proposed photographic exhibits on an individual basis at trial. Finally, the Government objects to Defendant's request for disclosure of demonstrative exhibits, arguing such an order would force the Government to reveal the nature of its closing arguments. Alternatively, the Government contends that should the Court require such disclosure, the order should apply equally to both parties.

In her Reply, Defendant appears to agree the Court should reserve ruling on the admissibility of any photographic autopsy exhibits until it has had a chance to review the photographs individually. (*See* Doc. 388.)

Rule 403 permits courts to "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice . . . or needlessly presenting cumulative evidence." Fed. R. Evid. 403. The Court reserves ruling on this issue because it would be impossible to determine which, if any, photographs are unnecessarily cumulative or unfairly prejudicial without first viewing the evidence. Counsel can make the appropriate objection if the issue arises at trial. Both parties shall disclose the use of any demonstrative exhibits prior to July 26, 2021, and the Court will rule as to any objections at the hearing with parties prior to jury selection that morning.

---

and witness lists)). Thus, Defendant's request for an order requiring the Government to identify the photographs it intends to proffer at trial is moot.

## V. Doc. 345: Evidence of CYFD Hearing and Result

Defendant argues the Court should preclude evidence or testimony that Jane Doe 2 was the subject of an abuse and neglect proceeding by the New Mexico Children, Youth and Families Department (CYFD) and that Defendant's parental rights to Jane Doe 2 were terminated. (*See* Doc. 345.) Defendant acknowledges the Government does not intend to introduce such evidence at trial yet presents this motion "in order to protect her rights to a fair trial." (*Id.* at 1.) Defendant requests that the CYFD proceedings be referred to as "a prior investigation." (*Id.* at 4.)

The Government states that it does not intend to ask witnesses about the specific CYFD hearings or the results therefrom, but responds it may ask witnesses to testify regarding statements Defendant made to them concerning the children or personal observations made of Defendant's house in October 2007. (Doc. 354 at 1.) The Government further intends to offer evidence regarding the examinations of Jane Doe 2 that were conducted per the CYFD. (*Id.*) The Government assures the Court that should the nature of the CYFD proceedings become relevant at trial in this matter, the Government will seek a ruling on admissibility prior to presenting the evidence to the jury. The Government also does not oppose referring to the CYFD proceedings or investigation as "a prior investigation." (*Id.* at 2.)

The Court thus denies Defendant's Motion as moot. Defendant may renew her objections at trial should the issue arise, and the Court will rule on any objections at that time. Because the Government does not object to the Defendant's request to refer to the CYFD proceedings as "a prior investigation," the Court grants Defendant's request.

## VI. Doc. 346: Improper Arguments or Demonstrations

Defendant argues the Government should be precluded from making certain improper arguments or demonstrations. (Doc. 346.) Defendant asserts her request is neither vague nor

hypothetical and asks the Court to specifically prohibit arguments that have been condemned by courts and yet continue to be advanced by federal prosecutors, including: (1) inviting the jurors to experience the crime vicariously, (2) inflaming the jurors' fear for their own safety or that of others, (3) portraying jurors as an arm of law enforcement, (4) asking the jurors to send a message, (5) "vouching" for or "bolstering" a witness or a witness's opinion, (6) suggesting additional evidence beyond that adduced at trial, (7) commenting on Defendant's silence or refusal to testify, (8) inviting the jury to consider Defendant's decision to plead not guilty or exercise her trial rights, (9) commenting on Defendant's failure to discuss or apologize for the crime prior to trial, (10) denigrating defense counsel or the defense, (11) demonizing Defendant, (12) misstating the evidence, (13) using dolls or other props to demonstrate or reenact for the jury how the injuries may have occurred without first showing substantial similarity, and (14) arguments based on racial stereotypes or prejudice.

The Government responds that it is aware of its ethical and legal obligations and will comply with the limits that courts have placed on counsels' arguments. (Doc. 355.) Thus, the Government asks the Court to deny the Motion, or, in the alternative, to apply the ruling equally to both parties.

There is no suggestion in this case that the Government intends to make improper arguments or demonstrations during trial. The Court denies the Motion as moot. Counsel can make appropriate objections should any of these issues arise, and the Court will rule on any objections at that time.

**VII.     Doc. 347: Expert Witness Testimony**

Defendant seeks to limit the testimony of Michelle Barry Aurelius, M.D., an Assistant Chief Medical Investigator with the Office of the State of New Mexico's Office of the Medical

7

Investigator; Karen Campbell, M.D., a forensic pediatrician and professor at the University of New Mexico; Emmanuel Gallegos, M.D., the emergency room doctor who treated Jane Doe 1; and Shelly Martin, M.D., a child abuse pediatrician from the San Antonio Military Center, pursuant to Federal Rule of Criminal Procedure 12(b)(3) and Federal Rules of Evidence 401, 402, 403, 702, and 704. (*See* Doc. 347.) Specifically, Defendant asks the Court to (1) preclude the testimony of Dr. Aurelius that suggests Jane Doe 1 died of blunt force injuries or that her death was a homicide or caused by child abuse, because it is unsupported and therefore inadmissible under Rule 702 (*id*. at 6–7, 8); (2) preclude Dr. Aurelius's conclusion that the four lesions on Jane Doe 1's torso were cigarette burns, because it is unsupported and therefore unfairly prejudicial under Rules 403 and 702 (*id*. at 7); (3) preclude under Rule 403 the cumulative, repetitive, and unfairly prejudicial testimony of Dr. Campbell to the extent that it repeats Dr. Aurelius's testimony and is based on Dr. Aurelius's autopsy report (*id*. at 9); (4) preclude any testimony from Dr. Gallegos that the child died of blunt force trauma, child abuse, or homicide, because such testimony would be cumulative and unfairly prejudicial under Rule 403 (*id*. at 11); and (5) preclude any testimony from Dr. Martin as cumulative under Rule 403 (*id.* at 11–12).

### A. Dr. Aurelius

Defendant "objects to any testimony from Dr. Aurelius that Jane Doe 1 died of blunt force injuries and that her death was [a] homicide or caused by child abuse." (*Id.* at 6.) Defendant does not challenge Dr. Aurelius's qualifications to give an opinion on the cause of the victims' deaths. Rather she argues that Dr. Aurelius's testimony should be excluded under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), because Dr. Aurelius did "not demonstrate that she reliably applied appropriate methodologies in reaching her conclusion." (Doc. 393 at 4.) Essentially, Defendant contends that Dr. Aurelius did not show her work; therefore, her testimony

should be inadmissible. (*See id.* at 2.) The Government, on the other hand, argues that Dr. Aurelius's testimony should be accepted because the field of forensic pathology "is widely accepted and routinely admitted." (Doc. 356 at 6.) It maintains that Dr. Aurelius's testimony "will be offered to aid the jury in understanding the evidence and determining the issues of the case" (Doc. 106 at 3), and that Dr. Aurelius's testimony "is admissible because it has 'a reliable basis in the knowledge and experience' [of forensic pathology], as prescribed by *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999)." (*Id.*) After reviewing the pertinent case law and the filings of the parties, the Court agrees with the Government.

*Daubert* created a two-pronged test which requires a district court to determine "whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." 509 U.S. at 592. As the "gatekeeper" the Court must make a "'preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Etherton v. Owners Ins. Co.*, 829 F.3d 1209, 1217 (10th Cir. 2016) (quoting *Daubert*, 509 U.S. 579 at 592–593). The Court's role as the gatekeeper "is simply to guard the jury from considering as proof pure speculation presented in the guise of legitimate scientifically-based expert opinion." Henry F. Fradella, *et. al.*, *The Impact of Daubert on Forensic Science*, 31 PEPP. L. REV. 323, 329 (2004). "[T]he gatekeeping responsibility of the trial courts . . . is to assure that an expert's opinions are based on relevant scientific methods, processes, and data, and not on mere speculation, and that they apply to the facts at issue." *Id*.

Here, the Government offers Dr. Aurelius as an experiential expert. (*See* Doc. 106 at 3.) *See United States v. Garza*, 566 F.3d 1194, 1199 (10th Cir. 2009) (Under Rule 702, an expert's

testimony may be deemed reliable where the expert witness's "specialized knowledge" is "acquired through 'experience' and 'training.'") (quoting Fed. R. Evid. 702).

> Experiential expert testimony . . . does not rely on anything like a scientific method. But this does not lead to a conclusion that experience alone—or experience in conjunction with other knowledge, skill, training or education—may not provide a sufficient foundation for expert testimony. To the contrary, the text of Rule 702 expressly contemplates that an expert may be qualified on the basis of experience. While a district court's task in examining the reliability of experiential expert testimony is therefore somewhat more opaque, the district court must nonetheless require an experiential witness to explain how [her] experience leads to the conclusion reached, why [her] experience is a sufficient basis for the opinion, and how [her] experience is reliably applied to the facts.

*United States v. Goxcon-Chagal*, 886 F. Supp. 2d 1222, 1244 (D.N.M. 2012), *aff'd sub nom. United States v. Medina-Copete*, 757 F.3d 1092 (10th Cir. 2014) (quoting *United States v. Wilson*, 484 F.3d 267, 274 (4th Cir. 2007) (quotation marks omitted)). The Court determines that the Government has met its burden to show that Dr. Aurelius, as a practicing physician who is board-certified in forensic pathology and who has ample experience reviewing comparable situations, is qualified by education, training, and experience to opine on the cause of Jane Doe 1's death and on whether Defendant's actions had any effect on Jane Doe 1's death. The Court is not convinced that Dr. Aurelius's lack of explanation disqualifies her testimony. Defendant may explore these issues on cross-examination, as the arguments go to the weight, rather than to the admissibility, of her opinions. *See Joe-Cruz v. United States*, No. CV 16-258 JCH/JHR, 2018 WL 1322139, at *4. (D.N.M. Mar. 14, 2018).

Defendant also objects to "any testimony [by Dr. Aurelius] that the circular lesions on the child's body were burns," because that conclusion "is not based on sufficient data, it is not the product of reliable methods, and there is no indication that the expert reliably applied accepted methods for determining what the lesions are to the facts of the case." (Doc. 347 at 7.) As stated

above, the Court finds Dr. Aurelius's testimony to be that of an experiential expert, and therefore, the Court will allow her to testify regarding Jane Doe 1's lesions.

Lastly, Defendant argues that Dr. Aurelius's potential testimony that the manner of death was homicide or caused by child abuse" is inadmissible as a legal conclusion. (Doc. 347 at 8.) The Government responds, however, that it will not ask "Dr. Aurelius about her conclusion that the manner of death was homicide in its case in Chief," but instead, it "request[s] permission to inquire of Dr. Aurelius whether the manner of death was "unnatural" or "not of natural causes." (Doc. 356 at 9.) The Court holds that testimony characterizing the death as a homicide, or as a result of child abuse, would violate Federal Rule of Evidence 704(b), as it would be testimony regarding the Defendant's mental state. *See United States v. Wood*, 207 F.3d 1222, 1235–36 (10th Cir. 2000). But if the Government only inquires of Dr. Aurelius whether the manner of death was "unnatural" or "not of natural causes," the Court finds no issues concerning Defendant's mental state, and therefore, will allow the testimony. *See Haney v. Mizell Mem'l Hosp.*, 744 F.2d 1467, 1474 (11th Cir. 1984) (expert permitted to testify that defendant's conduct fell below the standard of care but not permitted to use the word "negligent").

### B. Dr. Campbell

Defendant argues that Dr. Campbell's proposed testimony should be rendered cumulative, repetitive, and unfairly prejudicial if it "is merely a repeat of Dr. Aurelius'[s] testimony and is based on Dr. Campbell's review of Dr. Aurelius'[s] report." (Doc. 347 at 9.) The Government explains, however, that "Dr. Campbell's testimony will be different from that of Dr. Aurelius." (Doc. 356 at 10.) Even so, in reply, Defendant argues that Dr. Campbell's "proposed testimony should [still] be excluded because there is an insufficient explanation for the basis for her conclusions and there had been no accounting for obvious alternative explanations." (Doc. 393 at

11

7.) As to Defendant's contention that Dr. Campbell's findings lack "scientific testing or evaluation" (*id*. at 6), the Court finds Dr. Campbell's testimony to be that of an experiential expert, and therefore, the Court will allow her to testify.[2]

Defendant also claims that Dr. Campbell would be "telling the jury what conclusion to reach" if she testified as to which of Jane Doe 1's injuries constituted "great bodily harm" and were "non-accidental." (*Id.* at 6.) Here, the Court agrees with Defendant. Because Defendant is charged with multiple counts of negligent and intentional child abuse resulting in great bodily harm, the Court determines that Dr. Campbell's testimony as to such would be a legal conclusion. The jury can determine what is great bodily harm; it does not need Dr. Campbell's assistance. *See Hygh v. Jacobs*, 961 F.2d 359, 364 (2d Cir. 1992) (expert testimony defining the term "deadly force" and rendering Defendant's conduct unjustified was inadmissible because it merely expressed a legal conclusion). Therefore, Dr. Campbell is precluded from testifying that Jane Doe 1's injuries constituted "great bodily harm" and were "non-accidental."

### C. Dr. Gallegos

Defendant does not object to Dr. Gallegos' testimony if it "is limited to his observations and conclusions based on his treatment of Jane Doe 1 in the emergency room." (Doc. 393 at 7.) The Government stated that it intends to use Dr. Gallegos "as a fact witness to his actions in 'treating' Jane Doe #1 to include any observations that he made while treating her." Therefore, the Court determines there to be no issue.

---

[2] Regarding Dr. Campbell's potential testimony about Jane Doe 1's lesions, the Court holds as it did with Dr. Aurelius.

### D. Dr. Boyer

Defendant does not object to Dr. Boyer's testimony if it "is limited to his observations and conclusions based on his treatment of Jane Doe 1 and Jane Doe 2." (Doc. 393 at 7.) The Government stated that it "does not intend to have Dr. Boyer testify about the autopsy findings but rather as a fact witness to his actions in "treating" Jane Doe #2 and Jane Doe #1." (Doc. 356 at 11.) Therefore, the Court determines there to be no issue.

### A. Dr. Martin

Because the Government intends to "call either Dr. Martin or Dr. Campbell as a rebuttal witness to Dr. Wilson" (Doc. 356 at 11), Defendant may make specific objections at trial.

**THEREFORE,**

**IT IS ORDERED** that the Government's motion (Doc. 337) is **GRANTED**.

**IT IS FURTHER ORDERED** that the Government's motion (Doc. 338) is **GRANTED** in part, **DENIED AS MOOT** in part, and the Court reserves ruling on the remainder of the motion as described herein.

**IT IS FURTHER ORDERED** that the Court reserves ruling on Defendant's motion. (Docs. 339.)

**IT IS FURTHER ORDERED** that the Court reserves ruling on Defendant's motion. (Doc. 344.)

**IT IS FURTHER ORDERED** that Defendant's motion is **DENIED AS MOOT**, with the exception that the parties refer to the CYFD proceedings as "a prior investigation." (Doc. 345.)

**IT IS FURTHER ORDERED** that Defendant's motion is **DENIED AS MOOT**. (Doc. 346.)

13

**IT IS FURTHER ORDERED** Defendant's motion (Doc. 347) is **DENIED** as to all issues, but the Court orders that Dr. Campbell shall not testify regarding whether Jane Doe 1's injuries constituted "great bodily harm" and were "non-accidental."

_____
ROBERT C. BRACK
SENIOR U.S. DISTRICT JUDGE